Case 16-5203 Government of the Province of Manitoba and State of Missouri X. Rel. Chris Koster, Missouri Attorney General's Office v. Sally Jewell, Secretary, U.S. Department of the Interior et al., State of North Dakota Appellant Ms. Coppinger for the Appellant, Mr. DuBois for the Affiliate May it please the Court Good morning, my name is Nessa Coppinger and I'm here on behalf of the State of North Dakota With me today on behalf of the State is Assistant Attorney General Jen Verlager I would like to reserve two minutes for rebuttal, please We appreciate you hearing this appeal on an expedited basis North Dakota is facing a serious drinking water crisis The injunction modification at issue is extremely minor but of great consequence to the people of North Dakota The Court should reverse and remand the District Court's minute order with instructions to modify the injunction to permit paper design work on the biota water treatment plant The District Court made no findings of fact to which this Court can defer Nonetheless, there are certain undisputed facts and two legal grounds that we believe require reversal and entry of the modification Your Honors, today I will address those two legal grounds briefly and then return to discuss each in more detail First, when an injunction was issued to preserve the integrity of agency decision-making process the completion of that process is sufficient evidence of changed circumstances under Rule 60b-5 to warrant evaluating whether it is still equitable to apply the injunction without modification There is no dispute over the fact that Reclamation has completed a supplemental EIS and issued a record of decision The legal question for this Court to decide is whether, given the basis for the injunction here completion of NEPA review is sufficient evidence of changed circumstances to move on to the equitable inquiry Isn't our standard of review abuse of discretion? Where a District Court has made findings of fact it is an abuse of discretion standard We believe the de novo review standard applies here because of the Court's failure to make findings of fact The Court isn't required to make findings of fact under the Rule, right? Here, where there is no distinction between the findings of fact and the legal conclusion there is no basis to understand what the District Court's opinion was We believe the standard of review is de novo but we also believe that even under an abuse of discretion standard the District Court's order can't stand Assuming we find that the standard of review is abuse of discretion where is the abuse of discretion? The abuse of discretion is because to the extent that the Court wholesale adopted Manitoba and Missouri's opposition to the request for modification to the injunction it also adopted errors Some of those errors include the fact that the hydrographs, for example, presented by Manitoba as evidence that there was enough water for North Dakotans to get through this period Those hydrographs don't relate to the project area at all One of those hydrographs relates to an aquifer that is in an unrelated part of the state The other relates to an aquifer that is fully appropriated and has no excess water But you have the burden and what evidence did you present that the water was not sufficient? I guess as far as changed circumstances since the last time the Court examined the injunction So, two things, Your Honor One is that in terms of changed circumstances specifically with respect to water supply the hydrographs at appendix page 173 and 174 that relate to the Manit and Sundre aquifers Those are the two aquifers that supply the project area that's at issue Those clearly show the renewed decline of the aquifer since the catastrophic 2011 flooding And that decline has been precipitous, particularly in the Minot aquifer which has already lost two-thirds of the water gained from that flooding in the four years And just for time frame perspective it would take four years it would take 20 months to design the biota water treatment plant and another two years after that to actually construct the plant We're not seeking construction here But the total time frame is four years In that period of time two-thirds of the water gained from the most catastrophic flooding ever recorded in North Dakota has already been lost Also, in terms of changed circumstances we don't believe that we have to show specifically just that the changed circumstances relate to the water supply We believe the agency's conclusion of its decision-making process is sufficient to move on to the equitable analysis And once you get to that equitable analysis all that Manitoba and Missouri have presented is some hypothetical risk of a future NEPA review that may never actually take place In comparing that to the real risk that's facing North Dakotans where they're facing water shortages, boil orders, bottled water those are real and concrete concerns against which the irreparable harm allegations that Manitoba and Missouri have made carry no weight Remember, the allegations of irreparable harm that are relevant here relate to the modification request not to the project itself as we're not seeking any construction You have cited two changed circumstances One is that the reclamations process is completed The other is that the urgency with which North Dakota needs to get this project finished has increased because of changes in the water table and so forth Do you need both of those changed circumstances and do they go to different aspects of what the court would be looking at or would either one of them, in your view, be sufficient? In our view, either one would be sufficient I think the other aspect of the changed circumstance that relates to the water supply that's really important to keep in mind and is undisputed is that Minot, the city of Minot which has its own issues with water quality and quantity has contracts to supply water to the surrounding communities which have worse water Those contracts will end in 2018 The difference between 2013 and 2017 is that we are now one year away from those water supply contracts ending That is a significantly changed circumstance that increases the urgency of resolving the situation or at least starting to plan for how we can move forward So, it's also undisputed that 80,000 residents of northwest North Dakota need a reliable and adequate drinking water supply Manitoba and Missouri have not disputed that fact At least one project community in the area, Kenmare has a local water supply that has primary drinking water violations for arsenic which is a known carcinogen This is another issue that was presented to the district court that to the extent the court did not resolve this issue it was an error in the district court's to the extent that they adopted Manitoba and Missouri's presentation of the issue that would be an abuse of discretion because it's a clear error that briefing implied by Manitoba and Missouri implied that Kenmare's water supply is fine Well, the reason it doesn't have a violation now is because it's relying on Minot's water If it has to go back to relying on its own water its water violates a primary drinking water standard for a known carcinogen That is clear in the record Almost all of the water in the area does not meet one or more secondary drinking water standards and all of the communities face significant water shortages The district court's order contained no legal analysis or finding of fact and under this circuit's precedent in cases like In Re Navy Chaplaincy this alone means that the Minot order cannot be affirmed When you combine all of these factors together the changed circumstances, the urgent public need and the public interest in providing safe and clean drinking water mean the decision should be reversed and remanded back to the district court with instructions to grant North Dakota's motion I'll reserve my time for rebuttal Thank you Good morning, Your Honors My name is Scott Duboff I represent and counsel for the province of Manitoba and the state of Missouri With me in the courtroom are my colleagues Ben Lombiat, Gene Barinholtz and Aaron Edelman Manitoba and Missouri are plaintiffs in the proceeding below which involves the Bureau of Reclamation's NOAA's project Manitoba's long-standing concern regarding the NOAA's project is aquatic invasive species which could be transported from the basin in which the Missouri River is located over the continental abide into the Hudson Bay Basin and transport aquatic invasive species could be a devastating impact in Manitoba and elsewhere in Canada The state of Missouri's concern relates to the cumulative impact of water withdrawals from NOAA's and other projects particularly during times of drought and the impact that would follow on downstream availability of water from the Missouri River Judge Collier has presided in this case since 2002 During that time she has reviewed and revised on a number of occasions the injunction that she initially issued in April of 2005 In the June 14th minute order at issue Judge Collier made a finding and her reasoning was very clear She said she sees nothing in North Dakota's motion I'm quoting her to present either changes in law or facts sufficient to warrant modifying the injunction again now It's the injunction she had previously modified on a number of occasions Summary judgment briefing is complete before Judge Collier and oral argument remains to be heard Well if a party is presented a list of potential change circumstances and they have and they're not insignificant and the district court's response without in any way alluding to those things and explaining what the district court thinks about it merely says I don't see anything that presents changes in law or facts and I as an appellate judge say to myself sure looks like a change to me and it looks pretty significant in light of what they're worried about am I not obliged at least to say to the district court there's no explanation here that I can deal with Well it's not enough for you to simply say this is a really important issue Now I realize you think it's important from your side but they obviously think it's incredibly important from their side to have water supply that's clean and safe and all they're asking for is the right to design that's all that's all and there's no question that the longer you delay that the more likely it is that the stated problems will exacerbate design doesn't mean the end of it the district court judge has always got control over that It doesn't Let me just be very clear to you I don't get it I do not comprehend why there would be a refusal simply saying I don't see anything when all the request is is to design and the district court is giving nothing would be giving nothing more than that and the request for design is based on circumstances that appear to be different than the last time the district court looked at it and significantly so With all respect, Your Honor the circumstances are not different The last time that Judge Collier looked at the injunction was in the early part of 2013 and at that time she ruled under very similar circumstances there was a request before her at that time to allow design of in 2010 a request to allow design of the Lake Sakakawea intake She denied that In 2013 there was on a sua sponte the judge ordered the parties to brief whether there should be additional changes in the in the injunction because she was concerned that too much activity and construction had taken place and was concerned that it was inconsistent with her then extant injunction and in 2013 the judge made a finding in her published opinion that's quite relevant today She recognized that and she had actually in her show cause order in the response from the Department of Justice she inquired how additional expenditures if they were to take place as one of the parties requested it should take place and others opposed it The Department of Justice didn't take a position on whether the injunction should be modified but the Department of Justice said that we will we may consider those expenditures as part of the cost-benefit balance when we consider what the future of this project should be what our decision on the alternatives before us should be The Department of Justice said we considered appropriate to consider those additional expenditures in the cost-benefit balance Had Reclamation's decision issued at the time that you're talking about? Reclamation's decision issued about two years later It was then on remand from the 2010 remand order and it issued in 2015 There were several points made earlier regarding changed circumstances and I want to take just a moment to put this case in context Your answer to me did not respond to my question What the district court judge did in 2013 doesn't address, for example the Minowet water quality report their claims that the change in water quality the district court doesn't say no you're wrong there isn't any significant change in water quality there isn't any concern about supply you've just glossed right over it referenced back to 2013 as of no moment to me as an appellate judge because we're in 2017 now Well, your honor if I may refer to this court's decision in DiMedina v. Reinhart where the court said although discussion of the specific evidence I'm quoting the court, on which the district court relied in that case would have aided review the court upheld because, and this is where the quote begins we find in the record evidence that supports the district court's findings I don't I don't know why you want to answer my question they've either got changed circumstances that are viable and I think they are based on what they're saying the district court didn't respond to them I'm not satisfied as my appellate colleagues were in the case that you cited they looked at the record and felt I can understand why the district court did what the district court did I don't understand why the district court did what it did in this case when the request is simply for design and you spent seven minutes and haven't answered my question if I may refer to the evidence on changed circumstance the lead off argument by the state of North Dakota their first argument was if we don't get this injunction modified our state will not authorize funding for the project that was fallacious we showed it was fallacious it's no longer their lead off argument the state has been despite the injunction Kenmar doesn't get Kenmar's aquifer apparently has a arsenic concentration above the federal standard Kenmar does not use its aquifer its water supply Kenmar's water comes from the city of Minot I believe which meets the arsenic standard there are many communities throughout the country if they were to use their local aquifer they might exceed the arsenic standard they don't use their aquifer or they treat it to remove the arsenic the water quantity issue which was one of the changed circumstances suggested all that North Dakota presented in its motion to the court was a contention about aquifer levels they presented no data, showed no aquifer levels just a paragraph and a declaration by one of their employees in response in our opposition we looked to USGS data which was publicly available in the USGS and this is in the appendix the USGS has a map appendix 148 USGS shows aquifers in northwest North Dakota they don't show all aquifers they show several aquifers they only monitor certain aquifers, not all and the ones that they show all of those are at or above normal water levels the USGS also found that in the Noah's Project area aquifer levels have improved because that part of the state is in what USGS referred to as a wet climate period and will be at high flood risk for some time to come North Dakota presented no data in its motion to support that contention we were forced to do the research and found other data What about what your friend on the other side cited at JA 173 and 174 I believe those were hydrographs that was in their reply and those aquifers show that water levels in this part of North Dakota are higher than they had been since the 1980s I want to make it clear neither Manitoba or Missouri oppose North Dakota's need for an alternative water supply the issue here is whether the current injunction should be modified at this time and whether change circumstances have been shown the third change circumstance that is offered by the appellant is that there has now been a decision by the Bureau of Reclamation that is not a change circumstance at all the context here is a case which has gone on since 2002 the district court has had to twice remand the matter to the agency for insufficient NEPA analysis there is no reason to assume for purposes of this motion that the decision by the Bureau is not going to be subject to further challenge in fact it already has been subject to challenge that's why we are briefing summary judgment before the district court if you don't oppose the NAS project which I thought is what you said no we don't oppose an alternative water supply you don't oppose an alternative water supply but you oppose this project the inter-basin transfer because my question is if you don't oppose it what is the problem with design you oppose that because it's for this project the design is for the alternative the specific alternative that was selected in the record of decision it will be an inter-basin water transfer from the Missouri River over the Continental Divide into Northwest North Dakota the river actually isn't Northwest Dakota just over the Continental Divide and that from Manitoba's standpoint presents a very serious risk of aquatic invasive species transfer this has been the heart of our dispute with the Bureau of Reclamation for over 15 years and isn't that any proposed design  any proposed design they offer is subject to review by the district court and ultimately by this court underlying their arguments is you can take each one one by one and nitpick it and I understand what you've done I understand how the district court might respond to it but there's an underlying concern about time as passing and you don't object to their suggestion  and the more time you waste back and forth without proceeding in a way that doesn't affect your interests it doesn't make sense when you look at it it does affect our interests because the expenditures of state funds which are estimated at $5 million plus the expenditure of federal funds there's an issue which I won't take time to go into about whether their memorandum of understanding with the federal government means that they will forever be bound to pay that $5 million as opposed to a cost sharing but in addition there will be federal funds even with their MOU as they interpret it federal government employees are going to be reviewing everything that's done there will be travel expense, employee time there will be federal dollars spent as well and all of those dollars if we are successful on summary judgment and there's another remand and the agency has to decide again all of those dollars will in the cost benefit analysis the Bureau will then take up again all of those dollars can be counted by the Bureau on the side that is more beneficial to proceed with this alternative as opposed to because those dollars are only related to this alternative Could the District Court enter an order in joining the Bureau from doing that? I don't believe the District Court would have authority to enjoin the Bureau from considering those dollars Why not? Courts have lots of authority I think the Court would have to await the outcome if there was another remand and I hope there will be another remand to the Bureau I don't think the District Court would have authority to determine in advance how the Bureau should analyze the issues before it but when I mentioned earlier a quotation in Judge Collier's 2013 opinion when she quoted a statement by the Department of Justice that in a different context very different specific facts but a very similar context the Department of Justice said yes we will consider these additional expenditures as part of the cost benefit analysis and that is our concern it becomes a self-fulfilling prophecy suppose the District Court's order said go ahead and design but I want you to be very clear my order is telling you this is not a self-fulfilling prophecy there is no guarantee that this is the correct design but if you think it makes sense at this point because of the time concerns go ahead but I'm not going to let it count I just don't I mean courts do this all the time I just don't get it you're talking about time that's just going to go on and on and on we've seen these cases these NEPA reviews the way you're posturing the case you're talking another 10 years there's no question that's what will happen it will be another 10 years you say I'm hoping for another remand change of administration new people they linger over it will be two three years fooling around there back to the District Court and before we know it a decade's gone and all they're asking for is design the District Court can say you can do the design but don't think it's a winner your honor the District Court my time is obviously long expired now you mean you want it to expire right sometimes that's true your honor but I'm enjoying my discussion with you this morning the District Court in her order also recognized that summary judgment briefing at the time of the order had begun had just begun it is now complete as I said earlier oral argument still has to be held before the District Court and the I should also mention in that connection another point that was made by the by appellant's counsel is that the my not contract will expire in 2018 the design that they're talking about will take 86 weeks and construction will take according to their papers another two years so the minute contract doesn't really seem to be relevant it's not going to change the need for interim solutions during that time I just have a practical question which is I think they've done this well they've done an EIS this is the second one they've looked at this at least three times this has been going on for 30 years this argument has been going on for more than a decade every time the reclamation has come back with a response it has been Missouri water is a primary source so what is the alternative? One of the alternatives would be in basin sources use of reverse osmosis to treat using local aquifers in the final supplemental environmental impact statement this is discussed as an alternative it's referred to at times by the Bureau as too costly and the small communities involved said it was too costly for them communities far smaller in the province of Manitoba use reverse osmosis because it's a similar part of the continent similar geology the record shows that there are a number of small communities in Manitoba that are using reverse osmosis Thank you Thank you your honors I would simply request that the order of Judge Collier June 14th 2016 be affirmed. Thank you I'd like to focus on three particular points Before you start let me know what has happened in terms of the budget problem that was at issue initially? Sure the budgeting process is ongoing right now the legislature is in session and this is the biannual budgeting process that's happening now that process should be concluded by the end of April so a ruling would be timely here from this court frankly the reason that we didn't continue to pursue that is we think that argument is that although the timing is important of that budgeting process this is such a significant problem that we believe the legislature will hopefully find the money even if it's out of session. It would be a much easier process if it happened in the legislative session First of all opposing counsel says there's no reason to assume there won't be another challenge and in fact they've already brought a challenge. Well first of all that argument that you can assume another NEPA violation is contrary to precedent of this court that's the Ethel Court case an agency action is entitled to a presumption of regularity. This is a new agency action and it cannot be assumed that it is deficient. In addition the Pacific Rivers case tells us even where there's been a NEPA violation in the past you cannot assume a future NEPA violation. The second issue that I the federal government said they might consider expenditures as part of the cost-benefit balance. That is completely incorrect. That is not what the federal government said. What they said is they would acknowledge that those elements that had already been built existed in the EIS and that is exactly what they did. They did not weigh them in the cost-benefit analysis nor did they pretend that nothing had ever happened and it was a blank slate. It's not a blank slate and had the agency simply pretended that they didn't even exist. I guarantee you we'd be standing here trying to justify why we put our blinders on and pretended that there wasn't even pipeline in the ground. It's not a cost-benefit analysis also there are no federal dollars. But I guess your friend on the other side says that even if it's just an acknowledgement it tips the scales because it's an acknowledgement of a resource that's there and if that's tipping the scales and that seemed to be what was animating the district court's thinking here. Well first of all I think right now we're talking about the merits of the underlying review. NEPA is a procedural issue. Second of all I just think that's a fallacy, a logical fallacy in terms of saying if I acknowledge it exists it tips something in the favor. The entire review process is identifying what the lay of the considerations are out there. The agency actually in this NEPA review process selected the most expensive option that it considered. So it's not a matter of well there's some pipeline in the ground. This is the most expensive option that they selected and it includes the exact treatment technology advocated for by Manitoba as the best means to address its concerns about biota water, about biota invasive species. There are no federal funds that will be spent on this design work. Manitoba and Missouri's description of the memorandum of understanding is just not accurate. It plainly says North Dakota will not be reimbursed for any dollars spent up until the litigation is concluded with respect to the design work that we're talking about. My third point is that they mentioned the Minot contract because it expires next year and the design work will take longer than the contract will expire. It doesn't change the needs for the solutions. Two points on that. First of all, if we're in a 10 story building and the first floor of the building is on fire we don't say let's just wait until our floor of the building is on fire before we start making a plan for how to get out of it. Even if we know that three more floors of the building are going to burn before we can get out. That's what we're talking about here. Even if there's going to be a crisis, we have to start doing something to shorten the time of that crisis. Second of all, Minot, if they know that there's an end point, might be willing to extend those contracts for some short period of time, but they're not going to do it indefinitely at the risk of their own water supply. My final point in rebuttal is that Judge Brown, you asked about the alternatives. What's the alternative to Missouri River water? Now we're definitely getting into the merits of the underlying issue, but my friend says, well, there are in-basin alternatives like reverse osmosis. First of all, the district court has already ruled on that specific issue in a prior need for review. That is law of the case. Reverse osmosis is not a reasonable alternative. The court already ruled that. Second of all, even if we were to somehow reconsider it here, outside of the merits context, reverse osmosis loses 20% of the water that it treats. That may be fine for whatever is going on in Manitoba, but when you're talking about an area that has water shortages, that undermines the entire purpose of that treatment technology. We would request respectfully, Judge Edwards, you said why can't we just remand and find at least changed circumstances. We also believe that the public interest is so significant that it clearly demands reversal here. Do you agree with your friend on the other side that the district court would be without authority to make as part of an order if it were so inclined that the design could not be taken into account in any future study by the Bureau of Reclamation? To be honest with you, I'm not totally sure about whether the court has that authority. I would think that it probably does, but I can also tell you that if this design work is authorized to go forward and there's another NEPA review that has to take place, all those hypotheticals line up. The design work provides additional information that the agency could consider in addressing additional design needs or additional elements of the project. If the court says you shouldn't consider it, that's okay, I guess, in terms of a future NEPA review, but I think it's also worth considering whether that is just creating more information that the agency could consider in terms of understanding what would work best in terms of species. Thank you. Thank you.
judges: Brown, Wilkins, Edwards